**Gilion C. Dumas, OSB 922932**
gilion@dumasandvaughn.com
**Ashley L. Vaughn, OSB 114691**
ashley@dumasandvaughn.com
Dumas & Vaughn, LLC
3835 NE Hancock St., Ste. GL-B
Portland, Oregon 97212
Telephone: (503) 616-5007

**Carol M. Merchasin**, admitted *pro hac vice*
cmerchasin@mcolaw.com
**Meghna Sridhar,** admitted *pro hac vice*
msridhar@mcolaw.com
McAllister Olivarius
641 Lexington Ave., 13th Fl.
New York, NY
Telephone: (212) 433-3456

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RACHEL MARIE MONTGOMERY RAY, an individual, and RIKKIANNE CHATFIELD, an individual.<br><br>     Plaintiffs,<br><br>  v.<br><br>DZOGCHEN SHRI SINGHA FOUNDATION USA, INC., a Nevada corporation authorized to do business in Oregon; DZOGCHEN SHRI SINGHA OF PORTLAND, an Oregon corporation; DZOGCHEN BUDDHA PATH INTERNATIONAL, INC., an Oregon corporation; CARRIE URE, an individual; SEAN YOUNG, an individual; SHANNON YOUNG, an individual; TIM | Civil No. 3:23-cv-00233-SI<br><br>**FIRST AMENDED COMPLAINT**<br>(Sexual Battery-Vicarious Liability; Negligence; 18 U.S.C. §§ 1591, 1595 (Sex Trafficking); ORS §§ 30.867, 163.266 (Sex Trafficking; Human Trafficking); Fraud)<br><br><br>**JURY TRIAL DEMANDED** |

Page 1 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

BATESON, an individual; ERIK JUNG,
an individual;

Defendants.

Through their attorneys, Plaintiffs Rachel Marie Montgomery Ray and Rikkianne Chatfield allege as follows against the above-named Defendants:

## PRELIMINARY STATEMENT

1.      This lawsuit arises out of the sexual exploitation, trafficking, and rape of Plaintiffs Rachel Marie Montgomery Ray ("Montgomery") and Rikkianne Chatfield ("Chatfield"), two young students at the Dzogchen Buddhist Dharma Center in Eugene, Oregon (the "Dzogchen Retreat Center" or the "Center").

2.      DSS's founder, leader, and head teacher, Choying Rabjam (a/k/a Dzogchen Khenpo Choga Rinpoche, or "Choga"), used his exalted and powerful position within the Dzogchen organizations to prey on, groom, traffic, and sexually assault Plaintiffs between 2013 and 2020.

3.      Chatfield met Choga as a young, impressionable teenager.  She introduced him to her childhood best friend, Montgomery, a vulnerable young woman with a history of family trauma and substance abuse.

4.      Choga, the head teacher of the Dzogchen lineage of Tibetan Buddhism, headed both the overarching international Dzogchen organization and the Dzogchen Retreat Center. Defendants, including Individual Defendants, represented Choga as one of the most influential figures in their organizations and among North American Buddhist communities generally.

Page 2 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

5.      In their national and international centers, DSS created an environment where vulnerable individuals like Plaintiffs were primed for exploitation and abuse.  DSS and Individual Defendants encouraged Dzogchen residents and students, including Plaintiffs, to unconditionally obey Choga's every command.  On information and belief, they did so despite knowledge of Choga's propensity for physical and sexual abuse of students.

6.      Encouraged and facilitated by Defendants, Choga manipulated Plaintiffs' devotion and fraudulently promised them financial, social, educational, and personal benefits in private "empowerment" sessions. These sessions allowed Choga to sexually assault Plaintiffs.

7.      Choga's first target was Montgomery, who he repeatedly and nonconsensually sexually abused.  On one occasion, he plied her with alcohol until she blacked out, then raped her.

8.      Choga then selected a new target, Chatfield. Choga routinely coerced Chatfield into sexual activity through a combination of fraud, psychological manipulation and emotional and physical abuse. Choga abused Chatfield over 150 times.

9.      Plaintiffs bring the present lawsuit to hold Defendants accountable for their role in allowing Choga's regime of sexual predation to continue unfettered for almost seven years.

## JURISDICTION

10.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

11.     Plaintiff Montgomery is an adult woman residing in Washington who, at all material times, resided in Oregon.

Page 3 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

12.    Plaintiff Chatfield is an adult woman residing in Oregon, and who, at all material times, resided in Oregon.

13.    Defendant Dzogchen Shri Singha Foundation USA, Inc. ("DSSF") d/b/a Dzogchen Shri Singha Organization is, and at all material times was, a Nevada nonprofit corporation engaged in substantial and not isolated activities within this state, and which committed the alleged injurious acts and omissions in Oregon through its agents.  On information and belief, its Board of Directors members includes, or, at all material times included, President Defendant Sean Young (residing in Lane County, Oregon); Secretary Defendant Carrie Ure (residing in Multnomah County, Oregon); Treasurer Defendant Tim Bateson (residing in Lane County, Oregon); Director Defendant Erik Jung (residing in Lane County, Oregon); and Shannon Young (residing in Lane County, Oregon).  On information and belief, Defendant DSSF and Defendant Dzogchen Buddha Path International, Inc. ("DBP") share, or at all material times shared, common Board of Director members, namely Defendants Carrie Ure, Sean Young, Tim Bateson, and Erik Jung.  Defendant DSSF operates international and domestic associations, societies, foundations, and retreat centers in, among other locations, Canada, Taiwan, Japan, Hong Kong, Russia, the Netherlands, Finland, Estonia, Austria, Utah, and Oregon.

14.    Defendant Dzogchen Shri Singha of Portland ("DSSP") is an Oregon nonprofit corporation that, at all material times, had its principal place of business in Multnomah County, Oregon.  On information and belief, its President and registered agent is Rodney Yoder, who resides in Multnomah County, Oregon.  On information and belief, its Secretary is Defendant Carrie Ure, who resides in Multnomah County, Oregon.  On information and belief, currently and at all material times, Defendant DSSP has organized, operated, or sponsored business activities in

Page 4 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

Multnomah County, Oregon, for or in conjunction with the Defendant DSSF and Defendant DBP, including but not limited to spiritual retreats, classes, lectures, and marketing and fundraising activities.

15.    Defendant Buddha Path International, Inc. d/b/a Dzogchen Retreat Center USA ("DBP") is an Oregon nonprofit corporation established in 2018 and at all material times had its principal place of business in Lane County, Oregon.  On information and belief, it shares successor and/or joint liability for alleged tortious acts and omissions committed by the other Dzogchen Defendants (as defined below).  On information and belief, Defendant DBP's registered agent and Board of Directors President is Amanda Simons, who resides in Multnomah County, Oregon, and its Secretary is Defendant Sean Young, who resides in Lane County, Oregon.  On information and belief, currently and at all material times, Defendant DBP has organized, operated, or sponsored business activities in Multnomah County, Oregon for or in conjunction with Defendant DSSF and Defendant DSSP, including but not limited to spiritual retreats, classes, lectures, and marketing and fundraising activities.

16.    Defendants DSSF, DSSP, and DBP are together "DSS" or "Dzogchen Defendants."

17.    Defendant Carrie Ure is an individual adult who, on information and belief, resides in Multnomah County, Oregon.  At all material times, on information and belief, she was the Secretary for Defendant DSSF, a Director for Defendant DBP, and the Secretary for Defendant DSSP.  On information and belief, currently and at all material times, Defendant Ure organized, operated, or sponsored business activities in Multnomah County, Oregon, on behalf of the Dzogchen Defendants, including but not limited to spiritual retreats, classes, lectures, and marketing and fundraising activities.  At all material times, Defendant Ure acted as an agent for

Page 5 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

Dzogchen Defendants and Choga, within the time and space limits of her agency relationship with Dzogchen Defendants and Choga.

18. Defendant Sean Young is an individual adult who, on information and belief, resides in Lane County, Oregon. At all material times, on information and belief, he was the President of Defendant DSSF and the Secretary for Defendant DBP. Defendant Sean Young organized, operated, or sponsored business activities in Multnomah County, Oregon, on behalf of the Dzogchen Defendants and Choga, including but not limited to spiritual retreats, classes, lectures, and marketing and fundraising activities. At all material times, Defendant Sean Young acted as an agent for Dzogchen Defendants and Choga, within the time and space limits of his agency relationship with Dzogchen Defendants and Choga.

19. Defendant Shannon Young is an individual adult who, on information and belief, resides in Lane County, Oregon. At all material times, on information and belief, she has served as employee, Internship Director, and on the Board of Directors of various corporate DSS entities, including the Defendant DSSF. On information and belief, Defendant Shannon Young organized, operated, or sponsored business activities in Multnomah County, Oregon, on behalf of the Dzogchen Defendants and Choga, including but not limited to spiritual retreats, classes, lectures, and marketing and fundraising activities. At all material times, Defendant Shannon Young acted as an agent for Dzogchen Defendants and Choga, within the time and space limits of her agency relationship with Dzogchen Defendants and Choga.

20. Defendant Tim Bateson is an individual adult who, on information and belief, resides in Lane County, Oregon. At all material times, on information and belief, he was the Treasurer of Defendant DSSF and the Vice President of Defendant DBP. Defendant Bateson

Page 6 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

organized, operated, or sponsored business activities in Multnomah County, Oregon, on behalf of the Dzogchen Defendants and Choga, including but not limited to spiritual retreats, classes, lectures, and marketing and fundraising activities. At all material times, Defendant Bateson acted as an agent for Dzogchen Defendants and Choga, within the time and space limits of his agency relationship with Dzogchen Defendants and Choga.

21.    Defendant Erik Jung is an individual adult who, on information and belief, resides in Multnomah County, Oregon.  At all material times, on information and belief, he was a Director of Defendant DSSF, and the Treasurer for Defendant DBP.  Defendant Jung organized, operated, or sponsored business activities in Multnomah County, Oregon, on behalf of the Dzogchen Defendants and Choga, including but not limited to retreats, classes, lectures, and marketing and fundraising activities.  At all material times, Defendant Jung acted as an agent for Dzogchen Defendants and Choga, within the time and space limits of his agency relationship with Dzogchen Defendants and Choga.

22.    Defendants Ure, Sean Young, Shannon Young, Bateson, and Jung are together the "Individual Defendants."

23.    At all material times, Defendants jointly controlled and operated, and did business as the Dzogchen Shri Singha Organization and Dzogchen Retreat Center USA to run the Dzogchen Retreat Center.  Additionally, or alternatively, Defendants had an express or implied contract or agreement to engage in the joint enterprise of establishing, managing, operating, and promoting programs at the Dzogchen Retreat Center for the benefit of Defendants.  Defendants also had a joint pecuniary interest in programs at the Dzogchen Retreat Center.  Defendants invited members

Page 7 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

of the public, including Plaintiffs, to participate in activities, programs, and spiritual activities offered at the Dzogchen Retreat Center.

## FACTUAL ALLEGATIONS

### PLAINTIFFS ARE RECRUITED TO DSS

24.    Montgomery and Chatfield were both born in 1992 and raised in a small, rural Christian community in Graham, Washington.  Plaintiffs grew up together and became childhood friends.

25.    When Montgomery was twelve, her father passed away from cancer.  Overwhelmed with grief, both Montgomery and her mother turned to drugs and alcohol and became caught in a cycle of substance abuse.  At fifteen, Montgomery entered a voluntary de-addiction program. After intensive rehabilitation, Montgomery achieved sobriety.

26.    Keen to rebuild her life after this traumatic upheaval, Montgomery threw herself into her education.  During and after high school, Montgomery began attending local community college classes at Port Angeles, Washington.  An avid environmentalist, she hoped to pursue a career in natural resource management.

27.    Like Montgomery, Chatfield's home life was also turbulent. Chatfield's mother became terminally ill with cancer, and Chatfield also grew up in a home rife with substance abuse. She dropped out of school when she was around fifteen and sought out meaning and community in a nearby farm where she worked and lived.

28.    DSS recruited Chatfield in 2010.  Young, idealistic and in search of a home, Chatfield was instantly drawn to the Center and the tenets and practices of DSS.  DSS boasted a beautiful and extensive campus, a vibrant and well-travelled community and a charismatic leader, Choga.  Chatfield accepted a volunteer position doing unpaid labor around the Center.

Page 8 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

29.     At this time, Chatfield was still a teenager, and had no money. She was vulnerable, young, and had nowhere else to go.

30.     DSS leaders, including Individual Defendants, quickly taught Chatfield to revere Choga.  Choga was worshipped throughout Dzogchen centers and among DSS's members.

31.     Choga was the cornerstone of DSS's international operations. He travelled and taught across DSS's many centers, from California, to Nevada, to New York, Nepal, and India, to promote DSS.  Choga's accomplishments and status were one of DSS's biggest draws.  DSS frequently promoted him as their founder, leader, and head teacher, both in online publications and websites soliciting students and advertising their events and in offline forums worldwide.

32.     Whenever Chatfield encountered Choga, she felt honored to be in his presence. When Choga paid attention to Chatfield, she felt special and important.

33.     Choga singled Chatfield out. He allowed Chatfield to select new clothes from the Center's "lost and found" collection, commanding her to dress more femininely. He arranged paid employment for her with Defendants Sean and Shannon Young at the Center. He even fundraised for a ticket for Chatfield to travel on a DSS trip to Las Vegas for a retreat at the end of the year.

34.     By 2011, Chatfield fully accepted DSS and Choga's rules and teachings.

35.     During this time, DSS ran recruitment programs on college campuses and encouraged its teenaged and young-adult members to enlist others in their peer groups.  As a result, young people, like Chatfield, frequented events at DSS's various centers across the United States and were heavily encouraged to entice friends and acquaintances to join DSS.

36.     Excited to share her new life with her childhood best friend, in 2011, Chatfield invited Montgomery to visit the Dzogchen Retreat Center.

Page 9 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

37.     Prior to attending her first event at the Center, Montgomery was skeptical about DSS. Persuaded, however, by Chatfield's enthusiasm and representation of the Dzogchen Retreat Center as a community of like-minded, worldly, and diverse individuals, she agreed to spend the July 4 weekend at the Center.

38.     As a youthful, idealistic teenager from a small rural town, Montgomery, like Chatfield, was quickly captivated by DSS, its diverse, intellectually stimulating and environmentally conscious community and its beautiful, peaceful and extensive campus.

39.     Choga took an immediate interest in Montgomery. He personally welcomed her to the organization.  Montgomery, like Chatfield, was honored to be the center of such a revered leader's attention.  Before the weekend was over, Choga offered Montgomery a job with DSS, providing childcare for those who lived at the Dzogchen Retreat Center, including Defendants Shannon and Sean Young.  Drawn in by what seemed like a wholesome and safe environment and occupation after a troubled childhood, Montgomery readily accepted.

**DEFENDANTS AND CHOGA MANIPULATE AND EXPLOIT PLAINTIFFS**

40.     Choga founded DSS with the purported goal of transmitting "the authentic teachings of the Dzogchen Lineage to the West."  Operating out of Portland as its *de facto* headquarters, DSS is now a vast international organization, and has worked with Choga for years to expand the organization into a variety of associations, societies, foundations, and retreat centers across the United States and the world.  On information and belief, Choga frequently taught and travelled between Dzogchen centers in Portland and Eugene, and both locations drew in a large number of students, teachers, gurus, devotees, and believers across state and national borders.

Page 10 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

41.     Choga claimed his authority comes from his spiritual pedigree, and that he was identified as a "Tulku" at age five.  Choga further claimed that he was then appointed to study and teach for ten years at the Dzogchen Shri Singha Five Sciences University.  Choga holds himself out to the public as a "yoga master, scientist, musician, artist, astrologer, healer, psychologist and doctor of Tibetan medicine," with "over thirty-six years of intensive dharma training and experience."  DSS frequently amplifies these representations in its numerous online websites and publications, through which it solicits students and devotees and promotes its teachings.

42.     DSS represented Choga as a "high lama," directly blessed by the Buddha himself. DSS further represented Choga as the "embodiment of Love, Compassion, Knowledge, and Wisdom," like the Buddha, replete with "immeasurable love, generosity, and care for his students." DSS claimed that Choga could restore happiness to students who had been depressed and use his powers to cause "spontaneous miracles."

43.     These statements represented to Plaintiffs, and other members of DSS, that Choga was safe, trustworthy, and an experienced leader and teacher.

44.     At DSS retreat centers, including the Dzogchen Retreat Centers in Portland and Eugene, members and residents have a singular purpose: to follow Choga's orders without question or hesitation.  Defendants, including Individual Defendants Ure, Sean Young, Shannon Young, Bateson, and Jung, instructed students, including Plaintiffs, that everything Choga did was a "teaching" to benefit students. Defendants led Plaintiffs to believe that they would be safe in the community and at the Center if they obeyed Choga.

45.     If Choga did not like an element of a student's appearance, such as their clothing, their weight, their hairstyle, or their bathing habits, he would order it changed, and the student

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

would have to comply.  Choga frequently punished students by compelling them to engage in demeaning and humiliating conduct or pay fines.  They complied, accepting it as a rightful assertion of his authority within the organization.  DSS taught Plaintiffs and others that the relationship between teacher and student was one of total and unquestioning subservience. Choga's power within DSS was unassailable.

46.      Defendants, including Individual Defendants, and Choga emphasized obedience to the teacher as the foremost duty of Dzogchen students, with dire consequences promised for non-compliance. It was represented to Plaintiffs that breaching the duty of total obedience to Choga would lead to immense suffering, including bad health and a shorter lifespan.

47.      Non-compliance also had material implications. Students who disobeyed Choga could be publicly humiliated, verbally berated and physically punished. They could even be excommunicated and shunned from a community where they lived, worked, and had invested their financial resources.  Through threatening such consequences for all those who disobeyed him, Choga enshrined his own dominance.

48.      Because many DSS recruits could not afford to financially contribute to the organization, DSS and Choga encouraged them to take out loans, and sometimes even mortgage their houses, to fund DSS.  Some student devotees were also told to finance their lives with credit cards and hand over their cash earnings to DSS.  Some followers became financially destitute, even filing for bankruptcy.  Others consigned themselves to a life of financial dependence on DSS, needing to live and work on the retreat center grounds in exchange for being allowed to remain as members of the community.  This financial dependence contributed to the control DSS maintained over devotees' lives.

Page 12 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

49.    DSS and Choga's ethos of total subservience allowed them not only to accumulate power, but to exploit it for material gain.  While DSS and Choga's fundraising efforts mainly targeted donors in Taiwan and China, Plaintiffs observed that its labor supply and sizable following came largely through vulnerable individuals targeted through its recruitment programs, including those in the United States, and who, like Plaintiffs, struggled with some combination of substance abuse issues, family trauma, mental health disorders, or homelessness.

50.    Defendants, including Individual Defendants Ure, Shannon Young, Sean Young, Bateson, Jung, and Sullard, frequently justified Choga's behavior. Defendants and Choga together taught Plaintiffs that Choga's abrupt reversals, denigrations, and sexually invasive behavior were acceptable and a natural expression of Choga's authority within DSS.

51.    Choga often told Plaintiffs it was a privilege to work so closely with him.  Terrified of the consequences of non-compliance, Plaintiffs quietly accepted anything Choga said or did to them. Plaintiffs further had become socially and financially dependent on the Dzogchen Retreat Center and the Dzogchen community.  They had foregone other career paths and access to other sources of income and support, and lost touch with friends outside the organization.

**DEFENDANTS AND CHOGA PRIME MONTGOMERY FOR ABUSE**

52.    After working as a nanny at the Dzogchen Retreat Center for five months, Montgomery moved to Seattle in January 2012 to attend the University of Washington.  She remained drawn to Dzogchen Buddhism and the Dzogchen Retreat Center, however, and often returned when she could.  That summer, DSS once again hired Montgomery as a full-time nanny for six children at the Dzogchen Retreat Center, getting paid around $20 a day plus room, board and meals for her work.

Page 13 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

53.     By 2013, Montgomery had become a keen adherent of DSS's teachings. Volunteers, students, and staff members at the Dzogchen Retreat Center were encouraged to involve themselves fully within DSS's practices. Montgomery immersed herself in what DSS and Choga instructed her. Dzogchen Buddhism seemingly aligned with her idealistic worldview: help others, be kind, and leave the planet better than you found it.

54.     During her visits to the Dzogchen Retreat Center, Choga regularly sought out Montgomery. He often solicited her company while she was working, asking others to bring her to sit next to him and talk, sing, or otherwise entertain him. He also frequently complimented her in front of guests and other members of the Center. Indeed, members of the Center frequently commented on how Choga thought Montgomery was special and gave her particular attention. Montgomery learned more about Choga's stature and fame, including how Dzogchen members from around the world sometimes travelled across borders just for the chance to glimpse him teaching. This made Montgomery feel special in the light of Choga's praise, and eager to be at his disposal. Montgomery saw Choga, nearly three decades her senior, as a father figure.

55.     At the end of the summer of 2013, Choga offered Montgomery a position as "property manager" at the Dzogchen Retreat Center. DSS represented this offer as a great honor, and as an invaluable opportunity to become an integral part of the organization. Montgomery did not hesitate before accepting the position, even when Choga and Defendants Bateson, Sean Young, and Shannon Young told her that the position came with no monetary compensation – only free room and board. Choga and Defendants Bateson, Sean Young, and Shannon Young further encouraged her to apply for government benefits and food stamps to cover her expenses. Montgomery obeyed, eager to do whatever it took to continue serving within the organization.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

56.     What DSS and Choga marketed as a "property manager" position, however, was actually a job as Choga's maid and personal assistant. Throughout this period of employment, Montgomery enjoyed membership of Choga's inner circle, and the status and social security that afforded within the DSS Community. Choga instructed Montgomery in Dzogchen's teachings. Despite the menial tasks her job required, she considered the special attention from the community's leader, and the benefits it promised, to be the highest personal honor.

57.     By the end of the summer of 2013, Choga informed Montgomery that her "spiritual growth" would be incomplete, and her mental and emotional healing would be disrupted, unless she physically remained at the Dzogchen Retreat Center. On his word, Montgomery declined a job opportunity in Switzerland, and put on hold plans for further study in Europe, agreeing instead to stay on full time at the Center.

58.     By early fall 2013, Choga's control over Montgomery's life was unbearably coercive. Choga began to abuse Montgomery, degrading her verbally and emotionally in front of her peers, isolating her from her friends and romantic relationships and keeping her from activities she enjoyed. Choga monitored Montgomery's day-to-day activities and controlled her life, making remarks that vacillated dizzyingly between kindness and cruelty.

59.     Choga also constantly sought to put Montgomery to work, assigning her a series of mundane and sometimes meaningless repetitive tasks. Montgomery was instructed to clean Choga's belongings and books, for example, organize his supplies, and be at his beck and call for anything he wanted throughout the day.

60.     Choga's obsessive control over Montgomery extended to both her love life and her sexual choices. Montgomery, at the time, had commenced a romantic relationship with a fellow

Page 15 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

Dzogchen devotee ("John Doe"). Choga took an obvious dislike to Doe since Montgomery began her relationship with him, and often acted in a harsh and abusive manner towards him. At one point, Choga commanded Doe to sign an agreement to leave the United States in Doe's own blood.

61.     Choga also began to develop an inappropriate obsession with Montgomery's bodily functions. Choga asked for the dates of Montgomery's menstrual cycle, under the guise of respecting her hormonal changes. He ordered Montgomery to articulate her perspective on abortion, and commanded her to enact hypothetical conversations with Doe, where she would commit to never having an abortion.

62.     Montgomery's isolation and abuse at the hands of Choga were increasingly apparent to Defendants. Choga's harsh behavior towards Montgomery was often conducted in full view of other devotees and administrators, including Defendants Shannon and Sean Young, Jung, and Bateson, as well as then-DSS president Sullard. Defendants, as well as DSS staff and students, were also aware that Choga, a 49-year-old religious leader, was spending an increasing amount of time alone and unsupervised with Montgomery, 21.

63.     Choga's targeting of Montgomery was neither new, nor an unusual occurrence at the Dzogchen Retreat Center. Prior to isolating and targeting Montgomery, Choga frequently required Defendant Shannon Young[1] to spend time alone with him and, on information and belief, engaged in sexual relations with her. Choga also frequently acted in a harsh and abusive manner towards Defendant Sean Young, Young's partner, in a manner that was similar to his subsequent

---

[1] For ease of reference, "Young" shall refer to Defendant Shannon Young. Defendant Sean Young shall be referred to by his full name to avoid confusion.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

ill-treatment of Doe. Choga also acted in a similar manner with, and, on information and belief, had sexual relations with, another young and vulnerable female member of DSS, Jane Roe ("Roe").

64.    In early 2013, Montgomery, who had cared for Young's children as a part of her nannying obligations for the Center since 2011, was informed that Young was pregnant. The birth was heralded with great anticipation, as Choga had already designated Young's first child, a young girl, with the status of "tulku." This special designation was of great value and profit to DSS, who paraded the child and highlighted her role in the future of the organization.

65.    Young's new baby came as a surprise to the Dzogchen community: despite being born to a white, blond haired, and blue-eyed couple, she had distinctly East Asian features. When rumors began to abound that the baby was fathered by Choga, due to the amount of time Choga spent in private with Young, Young, Choga, and Choga, Young, and Sean Young acted quickly to quell these rumors. Young and Choga announced in the community that the baby looked "Tibetan" because she had been "blessed" by a guru that the Young family had visited in Canada. Young instructed Plaintiffs to repeat this story, and Plaintiffs, who trusted Young and Choga's words as sacrosanct, believed the story, and obeyed. Sean Young later confided to Montgomery that Choga had compelled the Youngs to urgently go to Canada to seek this blessing, at great cost, expense, and stress, shortly before the birth of the baby.

66.    Though the community was pleased to welcome the baby, Choga appeared to be disappointed. On information and belief, Choga did not yet have what was needed to secure the longevity of his lineage: a male heir, or "tulku."

### CHOGA GROOMS, RAPES, AND IMPREGNATES MONTGOMERY

67.    Around late September 2013, Choga developed an obsession with Montgomery's Christian past, and he told her that she needed to let go of, or renounce, her Christian upbringing.

Page 17 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

Choga informed Montgomery that her background, status as a worker, rather than a student, and poverty, all meant that her "spiritual growth" was "much lower" than everyone else at the Center, making her position at the organization precarious unless she could rectify her deficiencies. Choga further told Montgomery that all of this meant that she was unable to "fully participate" in Buddhist prayer and in the Center's activities and that she had to atone. Implicit in Choga's words was a veiled threat that should she not cooperate, she would lose her job, home, and community at DSS.

68.    Choga also informed Montgomery that she needed to have certain private teachings or "empowerments" to touch the sacred objects that she was cleaning and organizing. He represented to Montgomery that he was willing to provide these empowerments for free and it was an opportunity that any other devotee would have to spend significant time and money to obtain. In addition to being necessary for her work there, Choga further promised Montgomery that these empowerments would imminently accelerate her status within the community, so that she could get to the same level as her peers at the Center, and not fall further behind. Moreover, Choga reminded Montgomery that if she did not progress adequately on the path he suggested, DSS might have no use for her. Fearful of losing her way of life, social circle, community, and financial support, Montgomery agreed.

69.    Between late September and December 2013, Choga organized a series of private tutoring sessions with Montgomery. Although Choga focused primarily on deep guided meditation in the preliminary sessions, soon he began to instruct Montgomery that she needed additional "empowerments" to maintain her job and climb the professional and social ladder at DSS. These "empowerments," he said, required Choga to touch Montgomery, and penetrate her vagina with his penis and his fingers, all during deep meditative, almost hypnotic sessions.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

70.     Choga began by instructing Montgomery to sit on his lap, straddling him and face to face with him, and then asking her to suck his tongue "like a lollipop." Choga instructed Montgomery to visualize Choga as Buddha while he was doing so. Choga had an erection during these encounters.

71.     On at least two occasions, Choga took Montgomery to the "Dakini Mandala," a temple within the Center, and asked Montgomery to lie on the floor and visualize "dakinis," or female deities within Buddhism. Choga instructed Montgomery to pull down her underwear and then penetrated her. The first time he used his fingers and told Montgomery he was "priming her lotus," terminology that further misled Montgomery into presuming the non-consensual and invasive penetration was not a sexual act. On the second occasion, Choga penetrated Montgomery with his penis. Montgomery was unprepared for, and had not consented to, the penetration and felt a painful burning sensation. Choga instructed Montgomery to remain still and close her eyes while he stayed inside of her.

72.     Choga told Montgomery that these acts were not a form of "sex," as understood in the Western world, but was rather a "meditative practice" that could channel energy from teacher to student. Montgomery, who had been repeatedly told by Defendants, and by Choga in the presence of all Individual Defendants, for over two years that Choga's word was sacrosanct, and that any doubt about his intentions was wrong, believed him.

73.     Choga was well aware that his acts of sexual assault could not, and indeed, did not, bring Montgomery any benefit. Choga was also well aware that his promises to Montgomery were fraudulent, forceful, and coercive and designed to convince Montgomery that sexual conduct was

Page 19 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

part of his teachings.  Choga's deceptive actions served solely to ensure his own sexual gratification, and on information and belief, to prime Montgomery for impregnation.

74.    Montgomery began experiencing extreme anxiety, nightmares, panic attacks, stress, claustrophobia, and painful rashes.  At the time, she did not know the cause of these issues. Choga was the primary onsite medical provider for followers, and she did not have the financial means or health insurance to get adequate healthcare offsite.

75.    By December 2013, Montgomery was suffering from significant depression.

76.    On December 12, 2013, DSS hosted a celebration event for staff, followers, and Choga's close advisors at the Dzogchen Retreat Center and invited Montgomery.  Defendants Sean Young, Shannon Young, Bateson and Jung, as well as then-president of DSS John Sullard were all present.

77.    Large celebratory gatherings were a longstanding feature of the Center. Choga would mandate such events once or twice a month and would encourage all attendees to drink heavily. Choga would himself force attendees to consume more alcohol than they were comfortable with. During one such event, in or around 2010, a young female intern was hospitalized due to the amount of alcohol Choga had compelled her to consume.

78.    Montgomery's history of personal and familial substance abuse made her uncomfortable in these large gatherings with alcohol, and she was reluctant to drink heavily. Defendants, including Choga, were aware of this vulnerability, and had in the past given her guidance and support in healing her past drug use.  Nonetheless, Choga ignored Montgomery's insistence that she preferred her non-alcoholic cider, and pressured Montgomery to consume alcohol during the event, repeatedly refilling her glass and requiring her to finish a whole bottle of

Page 20 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

wine.  Choga told Montgomery that drinking alcohol would help her achieve spiritual connectedness.

79.     Montgomery rarely drank to excess and was soon intoxicated.  While Montgomery was barely conscious, Choga sought her out and laid her on the floor of the "Dakini Mandala," the same location of his previous "empowerments."  Although Montgomery was too incapacitated to process what was happening, she has subsequent recollections of the heavy weight of Choga's body on top of hers, his hair sweeping over her face.  Montgomery also recollects someone knocking on the glass door of the Mandala – someone who would have had a full view of Choga's act of rape and did not intervene.

80.     The next morning, Montgomery awoke on the floor of the Dakini Mandala at the Dzogchen Retreat Center, naked from the waist down with her pants and underwear pulled down over her ankles.  When she stood up, she felt pain and wetness in and around her vaginal area.  Montgomery immediately went to Defendant Shannon Young, confused and disoriented, to tell her she had awoken without pants on in the Dakini Mandala, and to ask if she had any knowledge of what had happened to her.  Young did not appear concerned or surprised, and light-heartedly reassured Montgomery that everything was all right and dissuaded her from asking further questions.

81.     Struggling to process what had happened, Montgomery put the event out of her mind until January 1, 2014, when she discovered she was pregnant.  Montgomery had not been sexually active with anyone in the months prior.  Troubled, she reached out to Choga, who confirmed that he had penetrated her in the temple that night.  Once again, Choga convinced

Page 21 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

Montgomery that though the interaction was similar to what the Western world perceived as "sex," it was actually intended for her benefit.

82.    Choga attempted to convince Montgomery that it was her destiny and duty as a diligent member of DSS and student of Choga to carry the pregnancy to term and mother his child. Choga further told Montgomery that her child could be an "enlightened being."  Montgomery understood this to mean that the child, just like the Young's, would be given the special designation of "tulku," implying a divine future for the child and an exalted status within the organization for her and Choga.  Choga thereby elevated his rape of Montgomery into a benefit for both Montgomery and DSS.

83.    Montgomery, with Young's miraculous birth, and the association between the "Dakini Mandala" and "spiritual empowerment," in the back of her mind, accepted this explanation.  Montgomery understood she had been intentionally impregnated as a spiritual blessing – albeit one with consequences she felt unprepared for, given her poverty and struggles with anxiety and depression after her "empowerment" encounters with Choga. Choga, aided and abetted by Defendants, misled Montgomery into believing this "intentional impregnation" was not and could not be an act of rape.

84.    Eventually, despite Choga's strong reprimands and threats, Montgomery chose to terminate the pregnancy.  Choga reluctantly agreed to fund the abortion, but made Montgomery promise him two things: that she would never tell anyone about the impregnation and that she would have a baby with him in the future in order to restore her standing.

85.    Choga's authorized duties and activities for Dzogchen Defendants directly led to and resulted in him repeatedly sexually assaulting Montgomery as described above.  His sexual

Page 22 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

assault of Montgomery constituted a harmful and offensive touching to which she did not and could not consent. His intentional and nonconsensual impregnation of Montgomery constituted battery to which she did not and could not consent.

## MONTGOMERY REPORTS CHOGA'S ACTIONS TO DEFENDANTS

86.    In September 2014, almost nine months following her assault, Montgomery, at the direction of then-President of DSS John Sullard, sent a letter to the DSS board (the "Board") detailing her experience with Choga. On information and belief, Defendants Sean Young, Bateson, and Jung, *inter alia*, were all members of the Board at this time. Montgomery asked the Board to elaborate on how the Dzogchen teachings informed the experiences she had with Choga, which she believed were not sexual acts.

87.    In response, the Board led Montgomery to believe that Choga was not a member, director, or employee of Defendants. The Board contended that it did "not have any official powers of oversight in regard to Choga's personal life" and insisted it did not "have at [its] disposal the specific information needed to answer all of [her] questions." The Board further advised her as too much time had passed since the incident, there was nothing they could do. The Board discouraged her from asking any more questions or probing further into the incident.

88.    Montgomery was at a dead end and had nowhere else to go for answers. She continued to hold on to her faith and her studies and work at the Center. Eventually, however, feeling distant from the community and ostracized by Choga, in particular after her abortion, she applied for, and was accepted to work with the Peace Corps in Ethiopia. After returning from her service and moving back to the United States in 2016, Montgomery eventually began to slowly reintegrate into the communities she had been isolated from during her time at the Dzogchen

Page 23 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

Retreat Center, attend therapy, explore professional opportunities, and date the man who would eventually become her future husband.

## CHOGA GROOMS, ABUSES, AND RAPES CHATFIELD

89.     Montgomery, fearful of the repercussions she could face from DSS and Choga, did not tell Chatfield about what had transpired. On one occasion, when Chatfield observed Montgomery acting distressed, Montgomery told her she could not say anything because Choga had commanded her not to. Chatfield, who was also fearfully obedient to Choga, agreed she should remain silent.

90.     Chatfield noticed Montgomery had begun to slowly withdraw from the community, and ultimately chose to leave it. At first, Chatfield believed she had left to continue her education.

91.     Defendant Shannon Young, and Choga, however, told Chatfield that Montgomery had been expelled and shunned from DSS as she had caused them grave harm. Choga and Young accused Montgomery of acting in a destructive manner towards the community and made false accusations.

92.     In Fall of 2014, on or around the time Montgomery had written to DSS's Board about her experiences, Choga began to act agitated. He held a series of "fire puja" ceremonies in order to "purify" the community.

93.     DSS held one such ceremony in October 2014, where Defendants Shannon Young, Bateson, and Jung, along with other senior members of DSS, including Sullard, were present. Choga pressured Chatfield to consume alcohol during the event, refilling her glass repeatedly through the evening.

94.     Choga began to speak to Chatfield about Montgomery again. He told her that Montgomery's actions had made him feel like some great evil was about to befall him, such as

Page 24 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

death or medical harm. He claimed that Montgomery's words had made Choga want to leave the country and return home to Tibet. Chatfield, who had been long subject to DSS's coercive control, was frightened: she believed Choga was predicting his imminent departure from Oregon. She was worried this would leave her without home and community once more.

95.     By the time the gathering ended, Chatfield was heavily intoxicated.  Choga told Chatfield that he and Defendant Shannon Young were going to perform an empowerment and a high-level spiritual practice for her.  Chatfield felt flattered at being selected for this teaching; she recognized that it was associated not only with spiritual advancement, but with status and socio-economic benefits within the community. She was also fearful of Choga's departure from the Center and was willing to do anything to please him enough to stay. She recognized that Choga's departure would threaten her home, community, job, and livelihood.

96.     Choga escorted Chatfield, alongside Defendant Shannon Young, to a private location within the Dzogchen Retreat Center.  Choga instructed both women to undress and then told Young to sit nearby and observe.  Choga instructed Chatfield to sit on his lap, straddling him and face-to-face with him, and to visualize Buddha while he penetrated her with his penis. Chatfield did not consider this a sexual act and did not consent to it as a sexual act, due to what Choga had told her about such practices.

97.     Afterwards, Chatfield asked Defendant Shannon Young if Choga had done this to her before.  Young responded that Choga had been doing this to her since around 2009.

98.     Days later, Choga requested Chatfield attend another empowerment, this time on her own.  Again, Choga instructed Chatfield to undress and sit on his lap, while he penetrated her

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

with his penis. Again, he defrauded Chatfield into believing this was a DSS practice and not a sexual act. Chatfield once more did not see nor consent to this as a sexual act.

99.     Over the course of the next five years, from 2014 to 2019, Choga continued to sexually abuse Chatfield under the guise of teaching her meditation and providing her "empowerments," identical to his previous assaults on Montgomery.  These assaults happened approximately twice a week, usually in the Dakini Mandala or in other private locations within the Dzogchen Retreat Center.  Each time, Choga represented to Chatfield that these acts were not sexual, but merely "empowerments" or "teachings" that were essential to her learning as a Dzogchen student. Over the course of five years, Choga violated Chatfield over 150 times.

100.     Often, Choga would initiate "empowerments" after pressuring Chatfield to drink to the point of intoxication.  Shannon Young joined on some occasions.  On the occasions where Shannon Young was present, Choga commanded one of the women to observe and recite a mantra while he penetrated the other.

101.     Choga told Chatfield she must never tell anyone what he was doing to her and that she must continue with the "empowerments" forever, or she would be excommunicated from DSS. He warned her that to question his authority was not only to lose her community and her home, but also her marriage. Painfully aware of the vicious and unforgiving manner in which the community had expelled and shunned Montgomery, Chatfield knew this was not an empty threat.

102.     Choga also told Chatfield that she had to engage in these empowerments with him every time he asked, or she could never be in his presence again. Chatfield understood this as veiled threat to exorcise her from the community and deprive her of her job, livelihood, home, social circle and community should she ever refuse him.

Page 26 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

103.     Soon after he began sexually abusing her, Choga began to regularly gift Chatfield clothes and small sums of money to supplement her lack of income.

104.     In tandem, Choga became very controlling of Chatfield.  Choga dictated her daily schedule and every decision, telling her exactly where and when she was permitted to eat, sleep, work, socialize, and have sex with her husband.  Choga asked Chatfield to inform him of when she was menstruating, on the basis that he needed to time their "empowerment" sessions around her cycle.

105.     Choga verbally abused, berated, and humiliated Chatfield in public, often for hours at a time.  She acquiesced in his sexual advances in an effort to avoid his abuse. His physical and psychological abuse eroded her ability to meaningfully consent to his sexual contact.

106.     For example, in May 2015, around the time of Chatfield's birthday, Choga gathered the community to give a speech about her.  He publicly humiliated her, calling her weak, naïve and a "baby."  Defendants Shannon Young, Ure and Jung, as well as Sullard, were present and witnessed this humiliation. Chatfield, stung by his comments, felt that the only way to avoid Choga's public derogation was to acquiesce to his every command.

107.     Soon after he began sexually abusing Chatfield, Choga began physically abusing her as well.  Choga punched her arms, leaving bruises.  Choga told her he did this for her benefit, because she was special and had potential within the community.  He used these acts of physical violence to further threaten and coerce Chatfield into obeying his commands.

108.     After he began sexually assaulting Chatfield, Choga began to require her to accompany him on business trips to promote DSS and recruit new followers. Chatfield travelled

Page 27 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

with Choga both across Oregon and internationally. Choga sexually, physically, and psychologically abused Chatfield on these trips.

109.    On one such trip in May 2015, Choga commanded Chatfield to drive him around Washington State to promote his work at a different Dzogchen Retreat Center.

110.    On this trip, Choga entered Chatfield's bedroom at the home of a DSS member who was hosting them. He penetrated her under the guise of giving her another empowerment. Chatfield, frozen, did not and could not say no.

111.    Later, as Chatfield and Choga were driving back to Oregon, Chatfield fearfully told that she was menstruating. Choga, who had instructed her that empowerments could not take place during menstruation, responded with unprecedented ferocity. For the next eight hours, he violently punched her while verbally abusing her. Choga told Chatfield that she was "lower than a dog."

112.    After this trip, Chatfield returned to the Dzogchen Retreat Center covered in bruises. A member of Choga's inner circle and DSS's leadership, Amanda Simons, saw first-hand the physical harm Choga caused Chatfield, but made her feel like her bruises should be a point of pride. Simons impressed upon Chatfield that Choga's violence was acceptable and in fact, to be celebrated as a welcome expression of his teachings. Simons told Chatfield Choga's violence purified the recipient's sins.

113.    Similarly, Defendants Bateson, Jung, Sean Young and Shannon Young would often impress on Chatfield that Choga's abuse was a welcome expression of his authority and a point of pride.

114.    In 2017, Choga approached Chatfield to inform her that Roe would be joining them for a "empowerment." Choga took Chatfield and Roe to the Dakini Mandala and forced them to

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

vow that they would never disclose this practice to anyone, including to Defendant Shannon Young.

115.     In 2017, DSS offered Chatfield the role of Internship Director at Dzogchen Retreat Center.  DSS paid her $1,000 a year.

116.     From around 2018, Choga began to systematically force Chatfield away from her family and her husband, who lived at the Dzogchen Retreat Centre but worked full-time to fund their residency there. Choga attempted to isolate Chatfield from her loved ones so as to more effectively accomplish his abuse.

117.     Choga regularly ordered Chatfield not to engage in sexual activity with her husband or spend quality time with him.

118.     On one occasion, Chatfield asked for permission to spend her singular day-off during a four-month period with her husband.  Choga denied her request and forced her to spend the day with him instead.

119.     On another occasion, Choga permitted Chatfield to visit her husband for the day, but Choga forbade her from having sex with him.  Chatfield engaged in sexual activity with her husband regardless, despite the immense guilt she felt for disobeying her master.  On her return, Choga commanded a confession.  When Chatfield did, Choga became enraged and once again subjected her to physical punishment.  He forced her to do "prostrations" (push-up like motions) at his feet on the gravel or face excommunication.

120.     On at least one occasion, Choga met privately with Chatfield's husband and impressed upon him that he was unwanted at DSS.

Page 29 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

121.    Choga also prevented Chatfield from seeing her family.  In 2018, Chatfield's family planned a vacation.  Choga fined her $1,000 as a punishment for accompanying them.

122.    By the fall of 2019, Chatfield's mental health had deteriorated severely.  Choga's sexual abuse and consistent oscillation between singling her out as special and high-status member of the community, to publicly humiliating, isolating, and physically and mentally abusing her, had driven Chatfield to a breaking point.  Chatfield began actively avoiding Choga, knowing if she encountered him, he would abuse her once again.

123.    Once Choga realized Chatfield was avoiding her, he was furious.  On one occasion, Choga forced Chatfield to perform five hundred "prostrations" (push-ups), which was a very painful process, or face excommunication.  Once again, Chatfield was reminded that saying "no" to Choga would come with painful physical punishment.

124.    On another, Choga verbally berated Chatfield for almost two hours in public, in front of DSS members and leaders. He viciously and tirelessly insulted her, calling her worthless and inadequate. After his verbal tirade, Choga poured a bottle of beer on Chatfield to complete the humiliation. Chatfield felt punished for trying to evade his sexual intrusions. She felt trapped. Once again, she knew she could not say no without facing physical, emotional, psychological, and financial harm.

125.    In early January 2020, Choga ordered Chatfield to leave her holiday celebrations with family to accompany him to Vienna.  Chatfield resisted, which enraged Choga. He threatened her that she would be excommunicated if she did not come with him.  She agreed to go, but upon her return, her resentment grew.

Page 30 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

126.    Eventually, with the onset of the COVID-19 pandemic, Chatfield got distance from Choga and the Center and a temporary respite from the relentless onslaught of abuse she had endured for the past half decade.

**MONTGOMERY BECOMES AWARE OF HER ASSAULT AND DEFENDANT'S OPPORTUNITY TO HAVE INTERVENED**

127.    Unbeknownst to Chatfield, in or around late December 2020 and January 2021, Montgomery, who had by then distanced herself from Dzogchen Buddhism, reconnected with a former member of DSS.  In conversations with this former member and other former Buddhist practitioners, Montgomery began to learn about a series of revelations in Buddhist religious circles in North America that prominent leaders within the community had been accused of, and at times admitted to, sexual impropriety, misconduct, and abuse, including leaders at well-known Buddhist sects like Shambala International and the Kamtsang Kagyu lineage.  Montgomery also heard rumors that some of these leaders were practitioners of Dzogchen Buddhism, including, possibly, Choga.

128.    These discoveries greatly disturbed Montgomery and caused her to revisit her experiences at DSS.  Montgomery began to see her interactions with Choga in a new light, only then understanding the root of the trauma, anxiety, and distress that had followed her time at the Dzogchen Retreat Center.  On or around early January 2021, Montgomery realized not only that what had happened to her was in fact rape, but also that Defendants had sufficient knowledge to warn her about the risks of guru sexual abuse, educate her about the risks of guru sexual abuse, and even to have prevented her sexual assault.

129.    Prior to this time, Montgomery had not and could not have realized that Choga's contact with her was non-consensual sexual assault.  Montgomery had been the subject of DSS

Page 31 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

and Choga's coercive control. She had repeatedly been led to believe that what had happened was not sexual assault, and was instead a requirement of her journey and social standing within the organization. She was terrified that if she refused to participate in the activities, she would be rejected from the community which was her sole socio-economic support system. Montgomery was terrified of being isolated, losing her job, social connections, community and indeed, what was at the time her primary source of income, shelter, stability, and subsistence. Even after Choga had sexual intercourse with her when she was drugged with alcohol, Montgomery firmly believed what he led her to believe: that all his contact with her, including his acts of non-consensual penetration with his fingers and penis, and what she now realizes was rape when she was too impaired to consent, was a gift rather than sexual assault. Defendants' psychological, and financial control and manipulation over her meant Montgomery did not discover, and in the exercise of reasonable care could not have discovered, until around early January 2021, that Choga had sexually assaulted her, and that the sexual assault had caused her significant and lasting psychological injury.

130.    Further, prior to this time around early January 2021, Montgomery did not discover, and in the exercise of reasonable care could not have discovered, that Defendants' tortious conduct caused her harm. She did not and could not have known, prior to this time, that there were suspicions that Choga had previously sexually assaulted followers and that Defendants were potentially aware; and that Defendants were also likely aware of misconduct by spiritual leadership in other major and analogous North American Buddhist lineages and organizations prior to 2013.

Page 32 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

131.    In April 2021, Montgomery reported Choga's December 2013 sexual assault to the Lane County Sheriff's Office in Eugene, Oregon.  As of the date of filing, the District Attorney's investigation remains ongoing.

**CHATFIELD BECOMES AWARE OF HER ASSAULT AND DEFENDANT'S OPPORTUNITY TO HAVE INTERVENED**

132.    Chatfield became aware of Montgomery's lawsuit in early 2023, and watched a media interview given by Montgomery on May 31, 2023. Having had some distance from Choga and the Center due to the pandemic, Chatfield had some space and time to reflect on her experiences at DSS. Upon hearing Montgomery speak about her experiences, she realized that Montgomery's experiences mirrored her own.

133.    Learning of Montgomery's abuse disturbed Chatfield profoundly and prompted her to again revisit her experiences at DSS.  Chatfield began to recognize that Choga had, in fact, repeatedly sexually abused and raped her. She also realized that Defendants had sufficient knowledge about Choga's practices to have warned her about the risks of Choga's dangerousness and to have taken steps to prevent Choga's continued sexual abuse.

134.    Prior to this time, Chatfield had not and could not have realized that Choga's contact with her was non-consensual sexual assault.  Like Montgomery, Chatfield had repeatedly been led to believe that what had happened was a requirement as his student, but for her status and socio-economic security within the organization.  Should she refuse to participate in the activities, she feared she would face psychological torment, physical abuse, and rejection from the community which was her sole socio-economic support system.

135.    Like Montgomery, Chatfield was horrified by the threat of losing her social connections, community and indeed, what for years had been her primary source of income,

Page 33 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

stability, and subsistence. Years of physical, emotional and verbal abuse and coercive control from her teenage years had primed Chatfield to believe that all of Choga's contact with her, including his acts of non-consensual penetration with his penis, was a benefit rather than sexual assault. Defendants' psychological and financial control and manipulation over her meant Chatfield did not discover, and in the exercise of reasonable care could not have discovered, until around May 2023, that Choga had sexually assaulted her, and that the sexual assault had caused her significant and lasting psychological injury.

136. Further, prior to this time, Chatfield did not discover, and in the exercise of reasonable care could not have discovered, that Defendants' tortious conduct caused her harm. She did not and could not have known, prior to this time, that Choga had previously sexually assaulted followers and that Defendants were potentially aware of those assaults.

137. In November 2023, Chatfield filed a police report reporting Choga's abuse. As of the date of filing, her case is under review.

138. At all material times, Dzogchen Defendants had the right to control and/or actual control over Choga's actions on behalf of and in association with Dzogchen Defendants. Dzogchen Defendants had the right to control and/or in fact controlled the day-today conduct of Choga that directly led to his sexual assault of Plaintiffs. Dzogchen Defendants authorized and empowered him to act and speak for the organizations as a trusted leader and mentor, and instructed and expected their followers, such as Plaintiffs, to submit to Choga's teachings, commands, and guidance at all times. Dzogchen Defendants knew that Choga was in a position of trust, confidence, respect, and authority of their followers, including Plaintiffs.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

139. Choga performed his actions and duties as a teacher and leader for Dzogchen Defendants in connection with his agency relationship for Dzogchen Defendants; within the time and space limits of that agency; out of a desire, at least partially, to fulfill his agency duties; and his duties generally were of a kind and nature that he was required to perform as a teacher, leader and guru for Dzogchen Defendants.

## **PLAINTIFFS' DAMAGES**

140. As a result of Defendants' tortious conduct, Montgomery was sexually and emotionally abused by Choga, and has suffered in the past and will suffer in the future psychological injuries including but not limited to low self-esteem, loss of faith, anxiety, panic attacks, posttraumatic stress disorder, stress, depression, distrust of authority, shame, trust issues and challenges in building and sustaining friendships, disassociation, intimacy issues, fear, anxiety and disassociation associated with pregnancy, and physical injuries associated with at least some of these psychological injuries. All of these injuries caused and will cause Montgomery noneconomic damages in an amount to be determined by a jury, not to exceed $8,000,000.

141. As a result of Defendants' tortious conduct, Chatfield was sexually and emotionally abused by Choga, and has suffered in the past and will suffer in the future psychological injuries including but not limited to low self-esteem, compulsive skin-picking, nightmares, insomnia, loss of faith, anxiety, panic attacks, posttraumatic stress disorder, stress, depression, distrust of authority, shame, trust issues and challenges in building and sustaining friendships, disassociation, intimacy issues, fear, and physical injuries associated with at least some of these psychological injuries. All of these injuries caused and will cause Chatfield noneconomic damages in an amount to be determined by a jury, not to exceed $8,000,000.

Page 35 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

Chatfield has also experienced a loss of income and loss of earning potential, causing Chatfield economic damages in an amount to be determined by a jury, not to exceed $500,000.

142.    Defendants acted with malice or a reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of Plaintiffs.  Plaintiffs therefore give notice of their intent to add a claim for punitive damages at any time after the filing of this suit.

<u>**FIRST CLAIM FOR RELIEF:**</u>

**SEXUAL BATTERY – VICARIOUS LIABILITY**
**(Oregon State Law Claim)**

**(All Plaintiffs Against Dzogchen Defendants)**

143.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

144.    Choga intended to cause harmful or offensive physical contact with Plaintiffs and did in fact cause harmful or offensive physical contact with Plaintiffs without their consent, as described above in paragraphs 52-85 and 89-126.  Choga's physical contact with Plaintiffs constituted sexual assault as defined in ORS 12.118 and related statutes.

145.    Choga sexually assaulted Plaintiffs in direct connection with his agency duties for Dzogchen Defendants; within the time and space limits of his agency duties for Dzogchen Defendants; out of a desire, at least partially and initially, to fulfill his agency duties for Dzogchen Defendants; and his duties were generally of a kind and nature that he was required to fulfill for Dzogchen Defendants. Choga's sexual assault of Plaintiffs directly arose from and was a direct outgrowth of the relationship he formed and cultivated with them in his role as a teacher for Dzogchen Defendants.

Page 36 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

146.    As a result and consequence of his sexual assault and intentional and nonconsensual impregnation, Montgomery suffered the injuries and incurred the damages described in paragraph 140.

147.    As a result and consequence of his sexual assault and physical battery, Chatfield suffered the injuries and incurred the damages described in paragraph 141.

<u>**SECOND CLAIM FOR RELIEF:**</u>

**NEGLIGENCE**
**(Oregon State Law Claim)**

*COUNT I: NEGLIGENCE*
**(All Plaintiffs Against All Defendants)**

148.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

149.    Based on Defendants' prior knowledge alleged above, Defendants unreasonably created a foreseeable risk of harm to Plaintiffs in, *inter alia*, one or more of the following ways:

a)  Failing to report Choga's sexual assaults of followers to law enforcement;

b)  Failing to reasonably respond to Montgomery's report of Choga's sexual abuse and misrepresenting Choga's role within the organization to Montgomery;

c)  Failing to disassociate with and prevent Choga from attending DSS's events and retreat centers, and interacting with DSS's followers;

d)  Failing to supervise Choga's interactions with followers, workers, students, and members of Dzogchen organizations to ensure his interactions were safe and appropriate;

Page 37 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

e)  Failing to warn and educate followers about Choga's history of sexual assaults, and the risk of sexual assault by spiritual leaders in the Buddhist community;

f)  Failing to properly educate its followers regarding what types of activities and lessons were and were not sanctioned by DSS, including but not limited to lessons involving non-consensual and invasive sexual contact and sexual assault;

g)  Failing to train leaders and employees in how to recognize, report, and prevent sexual assaults or sexually inappropriate behavior in the community;

h)  Failing to provide a safe and confidential reporting system for followers who had experienced sexual assaults or sexually inappropriate behavior in the community;

i)  Representing to the community that Choga was to be trusted and obeyed, at all costs, and that he was a safe and trustworthy mentor; and

j)  Failing to implement and enforce sexual assault prevention policies.

150.    As a direct and foreseeable result of Defendants' negligence, Plaintiffs suffered the injuries and damages described in paragraphs 140–141.

## COUNT II: *DANGEROUS PREMISES*
### (All Plaintiffs Against Dzogchen Defendants)

151.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

152.    Dzogchen Defendants invited members of the public, including Plaintiffs, to study, work, and live within the Center and at its premises.

153.    When Plaintiffs attended, studied, worked at, and lived within the Center, Dzogchen Defendants owed them a duty to take reasonable steps, such as those described in

Page 38 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

paragraphs 149 above, to protect them from reasonably foreseeable harm by Choga, DSS's founder and leader.

154.    It was foreseeable, as described above, that Choga would physically, emotionally, and sexually assault female members of the Dzogchen community, including Plaintiffs. Accordingly, Choga's behavior constituted a dangerous physical condition on the premises.

155.    As business invitees, Plaintiffs were a member of a class of individuals to be protected by Dzogchen Defendants while on their premises.

156.    Choga repeatedly sexually assaulted Plaintiffs on Dzogchen Defendants' premises. Choga also repeatedly emotionally, verbally, and physically assaulted Chatfield.

157.    Dzogchen Defendants' failure to take reasonable steps to protect Plaintiffs from Choga's foreseeable abuse was unreasonable in light of the known risks posed by Choga.

158.    Dzogchen Defendants' actions created a foreseeable risk of harm to Plaintiffs. Despite having prior knowledge of Choga's extensive history of sexually abusing female members of the Dzogchen community, Dzogchen Defendants knowingly allowed, permitted, and/or encouraged Choga to continue abusing its members, including Plaintiffs.

159.    As a direct and foreseeable result of Dzogchen Defendants' negligence, Plaintiffs suffered the injuries and damages described in paragraphs 140-141.

## THIRD CLAIM FOR RELIEF:

### FEDERAL SEX TRAFFICKING – VICARIOUS LIABILITY
(Federal Law Claim)

### (All Plaintiffs Against Dzogchen Defendants)

160.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

Page 39 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

161. In violation of 18 U.S.C. §§ 1591 and 1594, Choga knowingly, in or affecting interstate or foreign commerce, recruited, enticed, harbored and/or maintained, and/or attempted to recruit, entice, harbor, and/or maintain Plaintiffs knowing that means of force, threats of force, fraud, or coercion (or a combination thereof) would be used to cause Plaintiffs to engage in sex act(s) on account of which anything of value would be given to or received by any person.

162. Choga and Defendants' actions knowingly affected interstate or foreign commerce. *Inter alia,* Choga and Defendants operated an organization that recruited students, teachers, volunteers, donors, and devotees across state and national borders. Defendants solicited donations from international donors and advertised their classes and promoted their lineage on the internet, drawing in attendees from several different U.S states and countries. Choga travelled and taught across DSS's many centers, from California, to Nevada, to New York, Nepal, and India, all to promote and spread the sect's teachings.

163. Choga and/or Defendants knowingly recruited, enticed, harbored and/or maintained and/or attempted to recruit, entice, harbor and/or maintain Montgomery. *Inter alia*, Choga and Defendants offered Montgomery paid and unpaid positions within the Dzogchen Retreat Center, including as property manager, nanny, and personal maid. Choga enticed Montgomery to perform "empowerments" with him through promising her a greater role, benefits and status within the DSS hierarchy. Choga further recruited Montgomery to perform services for him during and after his sexual engagements with her, including continuing to instruct her to perform tasks as his maid. Defendants and Choga provided Montgomery with a place to live and work and provided her compensation and meals.

Page 40 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

164.    Choga and/or Defendants knowingly recruited, enticed, harbored and/or maintained and/or attempted to recruit, entice, harbor and/or maintain Chatfield.  *Inter alia,* Choga and Defendants offered Chatfield paid and unpaid positions within the Dzogchen Retreat Center, including as Internship Director.  Choga enticed Chatfield to perform "empowerments" with him by promising her a greater role, benefits, and status within the DSS hierarchy.  Choga further recruited Chatfield to perform services for him during and after his sexual engagements with her, including conducting business travel with him. Defendants and Choga provided Chatfield with a place to live and work and provided her compensation and meals.

165.    Choga knowingly, coercively, forcefully, and fraudulently induced Montgomery into sexual activity.  Choga had a longstanding sexual interest in Montgomery, as evidenced by his threatening behavior towards her boyfriend and his invasive monitoring of her menstrual cycle and bodily functions.  Choga knew that Defendants had manipulated and coercively controlled Montgomery into acquiescing to his commands.  Choga further knew that Montgomery's vulnerability and social and financial dependence on DSS would lead her to acquiescing to all his sexual demands. Choga further knew he was fraudulently and forcefully coercing Montgomery into nonconsensual sexual engagement for his own sexual gratification. Choga knew his and Defendants' promises and representations to Montgomery were fraudulent.  Choga exploited Montgomery's devotion and social, financial, and psychological dependence on him and DSS to coercively, forcefully, and fraudulently cause her to engage in sex acts, including sexual touching and penetration.  Choga further forcefully raped Montgomery when Montgomery was incapacitated with alcohol.  On information and belief, Choga's rape was driven by a desire to

Page 41 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

impregnate Montgomery with a future heir, as he had, on information and belief, done before with another member of DSS.

166.    Choga knowingly, coercively, forcefully, and fraudulently induced Chatfield into sexual activity.  As with Montgomery, Choga knew that Chatfield's vulnerability and social and financial dependence on DSS, along with his campaign of physical and emotional abuse and public humiliation, had eroded her ability to meaningfully consent to any of his fraudulent advances. Choga further knew that Defendants had manipulated and coercively controlled Chatfield into acquiescing to all his commands. Choga used a mix of physical and mental intimidation and assault, as well as alcohol, to defraud, coerce, and force Chatfield into sexual activity.  Choga knew his and Defendants' promises and representations to Chatfield were fraudulent. Choga exploited Chatfield's devotion and social, financial, and psychological dependence on him and DSS to coercively, forcefully, and fraudulently cause her to engage in sex acts, including sexual touching and penetration.

167.    Choga caused Montgomery to engage in a "commercial sex act."  On account of these fraudulent, forceful, and coercive sexual engagements, Choga promised to reward Montgomery, and promised her that such engagements would, *inter alia*, enhance her status within the organization, allow her to stay within the organization, with the material and social benefits that entailed, and reap certain rewards.  On information and belief, Choga also intended to impregnate Montgomery in order to receive a male "tulku" heir, in order to secure the longevity of DSS and gain material benefit.

168.    Choga caused Chatfield to engage in a "commercial sex act."  On account of these fraudulent, forceful, and coercive sexual engagements, Choga, *inter alia*, offered Chatfield gifts

Page 42 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

of clothes and small sums of money. On information and belief, Choga also offered Chatfield paid employment within DSS on account of her sexual engagements with him. Choga promised to reward Chatfield for his "empowerments" with her and promised her that such engagements would enhance her status within the organization, allow her to stay within the organization, with the material and social benefits that entailed, and reap certain rewards. Choga also offered Chatfield the opportunity to conduct business travel with him and paid her for her role within the organization.

169.   Choga engaged in violations of 18 U.S.C. §§ 1591 and § 1594 while acting through his agency duties for Defendants. As a result, Defendants are liable to Plaintiffs under 18 U.S.C. §§ 1591, 1594, and 1595.

170.   As a result and consequence of Defendants' violations of 18 U.S.C. §§ 1591, 1594, and 1595, Plaintiffs suffered the injuries and incurred the damages described in paragraphs 140–141. Plaintiffs are also entitled to reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF:

### FEDERAL SEX TRAFFICKING – BENEFICIARY LIABILITY
### (Federal Law Claim)

### (All Plaintiffs Against All Defendants)

171.   Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

172.   In violation of 18 U.S.C. § 1595, Defendants knowingly benefited, financially or by receiving something of value, from participation in a venture which they knew or should have known engaged in an act in violation of 18 U.S.C. §§ 1591 and/or 1594.

Page 43 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

173.    As alleged above, Choga's actions constituted a direct violation of 18 U.S.C. §§ 1591 and/or 1594.

174.    Defendants knowingly benefited, financially or by receiving something of value, from Choga.  Choga was the founder, Master, leader, and head teacher of DSS. Dzogchen recruited students, donors, volunteers, employees, teachers, and devotees by advertising and promoting Choga's status as a "tulku," his teachings, his experience as a "yoga master, scientist, musician, artist, astrologer, healer, psychologist and doctor of Tibetan medicine," and his claim to have "over thirty-six years of intensive dharma training and experience."  On information and belief, Defendants' income stream, labor pool, and institutional status all depended on Choga's continued leadership of the organization, and Defendants had a vested interest in keeping Choga satisfied, and ensuring his needs were met.

175.    Defendants participated in a venture with Choga.  Defendants associated with Choga and ran DSS, a common undertaking involving risk and potential profit.  Defendants assisted Choga in running the day-to-day operations of DSS, including at the various "Dharma," or "Retreat" centers, and Choga, in turn, worked, taught, meditated and led the lineage, corporate entities and centers.

176.    Defendants should have known Choga's actions constituted a violation of 18 U.S.C. § 1591.  Defendants knew, or should have known that, *inter alia*:

a)  Choga frequently manipulated Dzogchen teachings and cultural practices to his own advantage;

b)  Choga had a history of inappropriate sexual interactions with several female members of DSS, on DSS premises;

Page 44 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

c)  Choga frequently singled out for special treatment and conferred material and organizational benefits to female DSS members he was sexually abusing;

d)  By at latest 2014, that Choga had sexually assaulted Montgomery;

e)  Plaintiffs were devout, solely at Choga's services, and vulnerable to sexual exploitation and abuse;

f)  Choga had previously spent lengthy amounts of time in private with at least two other women at the Center, one of whom later became pregnant with a child many suspected to be Choga's;

g)  Choga had an obvious interest in Montgomery and was spending increasing lengths of time in private with a young woman many years his junior;

h)  Choga targeted and singled out Chatfield on several occasions between 2014 and 2020, and openly physically abused and publicly humiliated her; and

i)  Choga desired a male heir, or "tulku," to further his spiritual reign.

177.    As a result and consequence of Defendants' violations of 18 U.S.C. § 1591 and 18 U.S.C. § 1595, Plaintiffs suffered the injuries and incurred the damages described in paragraphs 140-141.  Plaintiffs are also entitled to reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### STATE SEX TRAFFICKING

**(Oregon State Law Claim: ORS §§ 30.867, 163.266)**

*COUNT I: VICARIOUS LIABIILITY*
**(All Plaintiffs Against Dzogchen Defendants)**

178.    Plaintiffs realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

Page 45 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

179.    As described above and incorporated by reference herein, Choga knowingly recruited, enticed, harbored, and/or obtained Plaintiffs, knowing that force, fraud, or coercion would be used to cause Plaintiffs to engage in sex acts performed in return for anything of value.

180.    Choga engaged in violations of ORS § 163.266 while acting through his agency duties for Dzogchen Defendants.

181.    As a result and consequence of Defendants' violations of ORS §§ 30.867 and 163.266, Plaintiffs suffered the injuries and incurred the damages described in paragraph 140-141. Plaintiffs are also entitled to reasonable attorneys' fees.

## COUNT II: BENEFICIARY LIABILITY
### (All Plaintiffs Against All Defendants)

182.    In violation of ORS §§ 30.867(2), Defendants knowingly benefited, both financially and/or by receiving something of value, from participation in a venture that involves an act prohibited by ORS § 163.266(1).

183.    As described above, Choga's actions constituted a direct violation of ORS § 163.266(1).

184.    As described above and incorporated by reference herein, Defendants knowingly benefitted, financially or by receiving something of value, from Choga.  Defendants further participated in a venture with Choga by running DSS, a common undertaking involving risk and potential profit.

185.    As a result and consequence of Defendants' violations of ORS §§ 30.867 and 163.266, Plaintiffs suffered the injuries and incurred the damages described in paragraph 140-141. Plaintiffs are also entitled to reasonable attorneys' fees.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

## SIXTH CLAIM FOR RELIEF:

### FRAUD
### (Oregon State Law Claim)

### (All Plaintiffs Against Dzogchen Defendants)

186.    Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

187.    Dzogchen Defendants invited Plaintiffs to the Center to participate in his teachings and activities, promoting the Center as a safe place that would benefit students psychologically and physically.

188.    Dzogchen Defendants represented to Plaintiffs that Choga was a venerated teacher. Dzogchen Defendants represented that Choga was a safe leader who would guide and benefit them psychologically and physically.  Choga gained the complete trust of Plaintiffs, who revered him as a highly esteemed teacher with their best interests in mind as his students.  Dzogchen Defendants made Plaintiffs believe that Choga's every act sought to benefit them in some way.

189.    Dzogchen Defendants also represented to Plaintiffs that they must surrender to Choga by obeying any and all of his requests without hesitation.  Dzogchen Defendants taught Plaintiffs that reprisal would arise if they did not follow his instruction.

190.    Relying on these misrepresentations, Plaintiffs surrendered their complete trust to Choga.  Plaintiffs relied on these misrepresentations to their detriment as Choga sexually assaulted and trafficked them.  Their reliance was justified given their physical and psychological state at the time, induced and maintained in large part by Choga and Dzogchen Defendants.

Page 47 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

191.     When Dzogchen Defendants made these misrepresentations, they at a minimum recklessly disregarded their truth. Dzogchen Defendants had knowledge that Choga was sexually dangerous to young female Dzogchen students like Plaintiffs.

192.     Dzogchen Defendants made these misrepresentations with the intent to deceive Plaintiffs.

193.     Dzogchen Defendants had a duty to disclose known threats to the health and safety of participants at the Center, including Plaintiffs.

194.     Additionally or alternatively, Dzogchen Defendants' invitation to Plaintiffs to participate in activities and work at the Center required them to disclose all information material to that commercial transaction.

195.     Dzogchen Defendants misrepresented, failed to disclose, and/or actively concealed the danger posed by Choga and by Dzogchen Defendants' lack of adequate policies to safeguard members from sexual abuse.

196.     Dzogchen Defendants' misrepresentations were material because they would have influenced Plaintiffs' decision to remain at the Center; report Choga to law enforcement; seek medical or mental health treatment; and/or take additional safety precautions to protect themselves from harm while attending activities and working at the Center.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.     If successful on any of Plaintiffs' claims for relief, noneconomic damages for Montgomery in an amount to be determined by a jury, not to exceed $8,000,000, and for

Page 48 – **FIRST AMENDED COMPLAINT**

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

**EXHIBIT B**

Chatfield in an amount to be determined by a jury, not to exceed $8,000,000, the exact amount to

be determined by the jury at the time of trial;

2.      If successful on any of Plaintiff Chatfield's claims for relief, economic damages

for Chatfield in an amount to be determined by a jury, not to exceed $500,000;

3.      For Plaintiffs' disbursements and incurred costs;

4.      For Plaintiffs' reasonable attorneys' fees; and

5.      For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and LR 38, Plaintiffs

demand trial by jury for all of the issues pleaded herein so triable.

DATED: January _____, 2024.


                                        Respectfully submitted,


                                        /s/ Ashley L. Vaughn
                                        Ashley L. Vaughn, OSB No. 114691
                                        Gilion C. Dumas, OSB No. 922932
                                        DUMAS & VAUGHN, LLC

                                        /s/ Carol M. Merchasin
                                        Carol M. Merchasin, admitted pro hac vice
                                        MCALLISTER OLIVARIUS

                                        /s/ Meghna Sridhar
                                        Meghna Sridhar, admitted pro hac vice
                                        MCALLISTER OLIVARIUS

                                        Of Attorneys for Plaintiffs


Page 49 – **FIRST AMENDED COMPLAINT**

| MCALLISTER OLIVARIUS | DUMAS & VAUGHN, LLC |
|---|---|
| 641 Lexington Ave., 13th Floor | 3835 NE Hancock St., Ste. GL-B |
| New York, NY | Portland, OR 97212 |
| Telephone: (212) 433-3456 | Telephone: (503) 616-5007 |

**EXHIBIT B**